# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

DENISE ELAINE KUHN,                   :
                                      :
                Plaintiff             :      No. 3:15-CV-0325
                                      :
        vs.                           :      (Judge Nealon)
                                      :
CAROLYN W. COLVIN, Acting             :
Commissioner of Social Security,      :
                                      :
                Defendant             :

**FILED**
**SCRANTON**

SEP 2 7 2016

PER _____
        DEPUTY CLERK

## MEMORANDUM

On February 13, 2015, Plaintiff, Denise Elaine Kuhn, filed this instant

appeal[1] under 42 U.S.C. § 405(g) for review of the decision of the Commissioner

of the Social Security Administration ("SSA") denying her application for

disability insurance benefits ("DIB") under Title II of the Social Security Act, 42

U.S.C. § 1461 et seq. (Doc. 1). The parties have fully briefed the appeal. For the

reasons set forth below, the decision of the Commissioner denying Plaintiff's

applications for DIB will be vacated.

---

1. Under the Local Rules of Court "[a] civil action brought to review a decision of
the Social Security Administration denying a claim for social security disability
benefits" is "adjudicated as an appeal." M.D. Pa. Local Rule 83.40.1.

## BACKGROUND

Plaintiff protectively filed[2] her application for DIB on May 9, 2012, alleging disability beginning on July 22, 2005, due to a combination of Panic/ Mood Disorder with agoraphobia, depression, anxiety, hypertension, suicidal and homicidal thoughts and ideations, and "instant and unpredictable anger." (Tr. 17, 137).[3] The claim was initially denied by the Bureau of Disability Determination ("BDD")[4] on June 18, 2012. (Tr. 17). On July 17, 2012, Plaintiff filed a written request for a hearing before an administrative law judge. (Tr. 17). A hearing was held on August 28, 2013 before administrative law judge Randy Riley, ("ALJ"), at which Plaintiff and an impartial vocational expert, Sheryl Bustin, ("VE"), testified. (Tr. 17). On September 18, 2013, the ALJ issued a decision denying Plaintiff's claims because, as will be explained in more detail infra, Plaintiff could perform light work with limitations. (Tr. 14-25).

---

2. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

3. References to "(Tr. _)" are to pages of the administrative record filed by Defendant as part of the Answer on April 29, 2015. (Doc. 10).

4. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration.

On November 6, 2013, Plaintiff filed a request for review with the Appeals Council. (Tr. 12). On December 11, 2014, the Appeals Council concluded that there was no basis upon which to grant Plaintiff's request for review. (Tr. 1-3). Thus, the ALJ's decision stood as the final decision of the Commissioner.

Plaintiff filed the instant complaint on February 13, 2015. (Doc. 1). On April 29, 2015, Defendant filed an answer and transcript from the SSA proceedings. (Docs. 9 and 10). Plaintiff filed a brief in support of her complaint on July 12, 2015. (Doc. 14). Defendant filed a brief in opposition on August 13, 2015. (Doc. 16). Plaintiff filed a reply brief on August 20, 2015. (Doc. 17).

Plaintiff was born in the United States on February 5, 1962, and at all times relevant to this matter was considered a "an individual closely approaching advanced age."[5] (Tr. 133). Plaintiff graduated from high school and can communicate in English. (Tr. 136, 138). Her employment records indicate that she previously worked as a purchasing agent for the Commonwealth of Pennsylvania's Department of Public Welfare Loysville Complex Youth Development Center. (Tr. 138, 180). The records of the SSA reveal that Plaintiff

---

5. "Person closely approaching advanced age. If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. 404.1563(d).

3

had earnings in the years 1979, 1981 through 1989, 1991, and 1993 through 2005.

(Tr. 119). Her annual earnings range from a low of no earnings in 1980, 1990, and

1992 to a high of thirty-two thousand eight hundred seventy dollars and twenty-

five cents ($32,870.25) in 2004. (Tr. 119).

In a document entitled "Function Report - Adult" filed with the SSA on

May 16, 2012, Plaintiff indicated that she lived in a house with her family. (Tr.

159). When asked how her illnesses, injuries or conditions limited her ability to

work, she stated:

> I can't tolerate people. Can't drive (only 10 mile radius of my
> house in mountains). Hate cities, red lights, kids, crowds,
> social events, highways. I'm very phobic. Always think
> somebody's out to get me. Have panic attacks a lot [especially]
> in a vehicle, thunderstorms, dogs, mice; paranoid, agoraphobic,
> depressed, suicidal and homicidal thoughts, angry a lot, severe
> anxiety, cry a lot.

(Tr. 159). From the time she woke up until the time she went to bed, she would lie

in bed for up to two (2) hours after walking up, read the Bible and Daily Bread,

turn on her television at noon, and then watch television in between "little things

[like] cleaning, preparing supper, [and doing the] dishes" until she went to bed.

(Tr. 160). She was able to prepare her own meals during the day several days a

week, vacuum, do the dishes, read, dust, take care of her cat, pull weeds, sweep

the deck, wash vehicles, and make the bed. (Tr. 161). She needed encouragement

4

doing yard work because she did not like to go outside. (Tr. 162). She was able to drive a car within a ten (10) mile radius and go out alone, but could not go far. (Tr. 162). She went outside about two (2) to three (3) times a week. (Tr. 162). When asked to check items which his "illnesses, injuries, or conditions affect," Plaintiff did <u>not</u> check lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, stair climbing, seeing, following instructions, or using hands. (Tr. 164).

Regarding her concentration and memory, Plaintiff needed special reminders to take care of her personal needs, to take her medicine, and to go places. (Tr. 161, 163). She could pay bills, count change, handle a savings account, and use a checkbook. (Tr. 162). She could not pay attention for long if she was distracted or bored, could finish what she started, followed written instructions "good," and followed spoken instructions with some difficulty due to her "memory fading." (Tr. 164). She did not handle stress or changes in routine well. (Tr. 165). She stated the stress caused her to become mean and hateful, to cry, and to "pitch things." (Tr. 165).

Socially, Plaintiff read, watched television, and did crossword puzzles daily. (Tr. 163). She would "visit" with others on the phone, but long conversations made her "really angry." (Tr. 163). She tried to visit her mother once a week, and

also visited her friends with her husband. (Tr. 162-163).  She attended doctor's
appointments and counseling on a regular basis. (Tr. 163).  She "had problems
getting along with everybody" and hated being around people. (Tr. 164).  She got
along with authority figures "ok" unless she did not agree with that person, in
which case she would voice her opinion. (Tr. 165).

At her oral hearing on August 28, 2013, Plaintiff testified that her typical
day involved turning on the television at noon, some cleaning, and making dinner.
(Tr. 33).  Plaintiff testified that she was able to go shopping once a month when
she went to her counseling appointments, but that she was driven to these
appointments and to shop by her friend. (Tr. 31).  She was able to drive alone
about once a week to visit her mother because it was in the mountains without
traffic. (Tr. 35).  Other than that, she did not want to leave the house because of
fear of panic attacks, of getting in an accident, and just generally that her home
was safe. (Tr. 37).  She was unable to do laundry because the washer and dryer
were located in the basement and she was too afraid to go down into the basement.
(Tr. 31).  Her husband took the garbage out and did the yard work because when
she went into the yard, she "[got] the creeps." (Tr. 32).  Socially speaking, she
would sometimes see her friends, family, and neighbors, but she also testified that
she did not like to be with people, even acquaintances. (Tr. 32).

6

She described her panic attacks as an inability to breathe or swallow with accompanying intense crying and shaking. (Tr. 40). In terms of medication, Plaintiff testified that they all had side effects, or she would experience no difference in her symptoms. (Tr. 34).

## MEDICAL RECORDS

### A. Medical Records from the Relevant Period – July 22, 2005 to December 31, 2010

On July 22, 2005, after quitting her job due to an anxiety episode, Plaintiff had an appointment with Steven R. Creps, M.D., due to complaints of "feeling numb." (Tr. 244). It was noted that this was her second "breakdown" due to work, and that Plaintiff was crying uncontrollably, but still able to answer all questions. (Tr. 244). Plaintiff's examination revealed that she had no suicidal or homicidal ideation; had intact memory, insight, and judgment; and was alert and oriented to person. (Tr. 243). Plaintiff was diagnosed with anxiety and panic attacks, prescribed her Ativan, and instructed not to work. (Tr. 243).

On August 1, 2005, Sandra Abbey completed a Family and Medical Leave Act form opining that Plaintiff could not return to work due to severe anxiety and panic disorder with a poor prognosis that left her unable to work and an inability to concentrate or focus. (Tr. 224-26).

7

On August 18, 2005, Plaintiff had another appointment with Dr. Creps due to experiencing panic attacks, crying episodes, increased mood swings, irritability, suicidal thoughts, agitation, and increased thoughts that people at work were out to get her. (Tr. 246, 335). Plaintiff's examination revealed she was not in acute distress, and she had normal judgment and insight, mood and affect, memory, and orientation. (Tr. 245). He assessed Plaintiff with anxiety and panic attacks, and instructed her to continue her current medications, attend her mental health appointment, and avoid work. (Tr. 245).

On January 9, 2006, Plaintiff had an appointment with Sandra Abbey, who noted that Plaintiff's symptoms included weight loss, excessive sleep, mood swings, lack of energy, tearfulness, panic, irritability, and problems with activities of daily living. (Tr. 342). Plaintiff was diagnosed with Major Depressive Disorder, severe with psychotic features, and Panic Disorder with agoraphobia, and was assigned a GAF of thirty-five (35). (Tr. 343).

On January 5, 2007, Plaintiff had an appointment with Sandra Abbey and reported that she had become more irritable and cranky once she stopped taking Lamictal. (Tr. 489). Her mental status examination revealed that she: was appropriately dressed; had a clear, organized, and generally directed thought process; and had an anxious, blunted, and restricted speech and poor insight and

8

judgment. (Tr. 490). Plaintiff was assessed as having Panic Disorder with agoraphobia, Generalized Anxiety Disorder, and Depressive Disorder, not otherwise specified. (Tr. 491). Ms. Abbey gave Plaintiff a Global Assessment of Functioning ("GAF") score of fifty (50). (Tr. 491).

From February 13, 2008 through October 13, 2010, Plaintiff visited Ms. Abbey quarterly for medication checks. (Tr. 457-58, 466-488). Plaintiff's various mental status examinations revealed a mood that varied from irritable to angry to euthymic, and that she had a consistently normal appearance, intact memory, coherent thought processes, and no suicidal or homicidal ideations. (Tr. 457-458, 466-488). Plaintiff reported that her symptoms were relieved by medication, but that she had not been taking Wellbutrin as prescribed and refused to change her medications. (Tr. 457, 468-469, 472-474, 482, 484).

**B.    State Employees' Retirement System ("SERS") Medical Reports**

On August 15, 2005, John Caruso, D.O., Plaintiff's primary care physician, completed a SERS medical report for her. (Tr. 339-340). Plaintiff reported that she felt better every day, but that she believed the stress of work was too much for her. (Tr. 339). Plaintiff was assessed as having panic attacks and an anxiety disorder, and Dr. Caruso recommended she continue to see her counselor and psychiatrist, and adjust her medications. (Tr. 340). Dr. Caruso opined that

Plaintiff was unable to "return to her present duties/job." (Tr. 340).

From 2005 to 2008, Ms. Abbey prepared four (4) SERS reports between 2005 and 2008. (Tr. 335-336, 342-343, 347-348, 355-356). It was noted that Plaintiff had been experiencing weight loss, irritability, lack of energy, inability to focus, and difficulty with outside activities of daily living, but the ability to perform activities of daily living inside. (Tr. 335, 342, 355). Plaintiff was assessed as having severe Major Depressive Disorder and Panic Disorder with agoraphobia and a GAF score ranging from thirty-five (35) to fifty-five (55). (Tr. 336, 343, 356). Ms. Abbey opined that she was unable to perform her current job. (Tr. 336, 343, 356).

From 2005 through 2010, Mr. Benner completed yearly SERS and noted that Plaintiff complained of anxiety. (Tr. 313, 316, 337, 349, 361). Mr. Benner assessed Plaintiff with Panic Disorder with agoraphobia and recurrent Major Depressive Disorder with GAF scores ranging from forty-nine (49) to sixty (60). (Tr. 314, 317, 338, 350, 362). Mr. Benner opined that Plaintiff's medication regimen was effective and that her symptoms had moderately improved, but that due to anxiety and Panic Disorder, she was not capable to performing her position's duties. (Tr. 314, 317, 338, 350, 362).

In May 2008 and February 2010, John Mira, M.D., completed two (2)

10

SERS. (Tr. 359-360, 370-71). Plaintiff complained of extreme irritability, intolerance for stress or people, agitation, extreme irritability, paranoia, and panic attacks several times a day. (Tr. 359, 370). Dr. Mira diagnosed Plaintiff with Panic Disorder with agoraphobia and a mood disorder, and assigned Plaintiff GAF scores of forty-eight (48) and fifty-two (52). (Tr. 360, 371). He opined that Plaintiff was incapable of performing her current job or working. (Tr. 360, 371).

On January 16, 2009, Eros Motrin, M.D., completed a SERS medical report. (Tr. 365). It was noted that Plaintiff complained of crying, intense irritability, and mood swings. (Tr. 365). Plaintiff was assessed as having a mood disorder, Panic Disorder with agoraphobia, and a GAF score of forty-eight (48). (Tr. 366). Dr. Motrin opined that Plaintiff had experienced a poor response to medication therapy and could not work. (Tr. 366).

## C.   Medical Evidence Post-Date Last Insured

Mr. Benner, Dr. Mira, and Ms. Abbey completed SERS medical reports after Plaintiff's December 31, 2010 date last insured, and each opined that Plaintiff could not return to work at her most current position. (Tr. 376-379, 382-385, 611-614).

On July 25, 2012, Mr. Benner completed a Mental Impairment

Questionnaire. (Tr. 504-09). Mr. Benner opined that Plaintiff had: marked
difficulties in maintaining social functioning and in maintaining; concentration,
persistence or pace; moderate restriction in her activities of daily living; and no
episodes of decompensation. (Tr. 508). Mr. Benner also opined that Plaintiff: (1)
was unable to meet competitive standards with regard to working in coordination
with or proximity to others without distraction, accepting instructions and
responding appropriately to criticism from supervisors, getting along with
coworkers or peers, dealing with the general public, and dealing with the stress of
semiskilled and unskilled work; (2) had no useful ability to travel to unfamiliar
places; (3) had a very good or unlimited ability to remember work-like procedures,
understand, remember, and carry out very short and simple instructions, maintain
attention for up to two (2) hours, maintain regular attendance and be punctual with
customary, usually strict tolerances; (4) sustain an ordinary routine without special
supervision; (5) make simple work-related decisions; (6) ask simple questions or
request assistance; (7) respond appropriately to changes in a routine work setting;
(8) be aware of normal hazards and take appropriate precautions; (9) adhere to
basic standards of neatness and cleanliness; (10) would have limited but
satisfactory abilities in completing a normal workday and workweek without
interruptions from psychologically based symptoms; (11) perform at a consistent

pace without an unreasonable number and length of rest periods; (12) deal with normal work stress; (13) understand, remember and carry out detailed instructions; and (14) set realistic goals or make plans independently of others. (Tr. 506-07).

On August 8, 2012, Ms. Abbey filled out a Mental Impairments Questionnaire. (Tr. 510-15). Ms. Abbey opined that Plaintiff: (1) was unable to meet competitive standards; (2) had no useful ability to function in most functional areas; (3) had limited, but satisfactory ability to adhere to basic standards of neatness and cleanliness; and (4) had seriously limited, but not precluded, ability to be aware of normal hazards and take appropriate precautions. (Tr. 512-13).

On June 28, 2013, Dr. Mira filled out a Mental Impairments Questionnaire (Tr. 599-604). Dr. Mira opined that Plaintiff: (1) had extreme difficulties in maintaining concentration, persistence, or pace and in social functioning; (2) marked restriction in activities of daily living; and (3) no episodes of decompensation. (Tr. 603). Dr. Mira opined that Plaintiff had no ability to perform in all the mental abilities and aptitudes needed to work. (Tr. 601-02).

### D.    State Agency Physician Opinion

On June 15, 2012, Jonathan Rightmyer, Ph.D., a state agency psychologist, reviewed Plaintiff's medical records and completed a Psychiatric Review

Technique form. (Tr. 50-51). Dr. Rightmyer opined that during the relevant

period, there was insufficient evidence to determine any limitation in activities of

daily living, social functioning, and concentration, persistence, or pace, and

whether Plaintiff experienced any episodes of decompensation. (Tr. 50-51).

## STANDARD OF REVIEW

When considering a social security appeal, the court has plenary review of

all legal issues decided by the Commissioner. See Poulos v. Commissioner of

Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of

Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55

F.3d 857, 858 (3d Cir. 1995). However, the court's review of the Commissioner's

findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those

findings are supported by "substantial evidence." Id.; Mason v. Shalala, 994 F.2d

1058, 1064 (3d Cir. 1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

Factual findings which are supported by substantial evidence must be upheld. 42

U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where

the ALJ's findings of fact are supported by substantial evidence, we are bound by

those findings, even if we would have decided the factual inquiry differently.");

Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the

Secretary must be accepted as conclusive by a reviewing court if supported by

14

substantial evidence."); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Keefe

v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Martin v. Sullivan, 894 F.2d 1520,

1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of

evidence, but 'rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565

(1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938));

Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008);

Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has

been described as more than a mere scintilla of evidence but less than a

preponderance.  Brown, 845 F.2d at 1213.  In an adequately developed factual

record, substantial evidence may be "something less than the weight of the

evidence, and the possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's finding from being

supported by substantial evidence." Consolo v. Federal Maritime Commission,

383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in

the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the

record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340

U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-07. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

## SEQUENTIAL EVALUATION PROCESS

To receive disability benefits, including supplemental security income, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Further,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether

16

a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step process in evaluating disability and claims for disability insurance benefits.  See 20 C.F.R. § 404.1520; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy.  Id.  As part of step four, the Commissioner must determine the claimant's residual functional capacity.  Id.  If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.  Id.  "The claimant bears the ultimate burden of establishing steps one through four."  Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a

regular and continuing basis.  See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996).  A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

"At step five, the burden of proof shifts to the Social Security Administration to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and residual functional capacity. " Poulos, 474 F.3d at 92, citing Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004).

## ALJ DECISION

Initially, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through the date last insured of December 31, 2010.  (Tr. 19).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity from her alleged onset date of July 22, 2005.  (Tr.

18

19).

At step two, the ALJ determined that Plaintiff suffered from the severe[6] combination of impairments of the following: "affective disorder; and anxiety disorder (20 C.F.R. 404.1520(c))." (Tr. 19).

At step three of the sequential evaluation process, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 19-20).

At step four, the ALJ determined that Plaintiff had the RFC to perform light work with limitations. (Tr. 15). Specifically, the ALJ stated the following:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Plaintiff] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: work activity is limited to simple, routine, repetitive tasks in a work environment free from fast-paced production involving only simple work-related decisions with few, if any, work place

---

6. An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

changes, no interaction with the public, occasional interaction
with co-workers, but no tandem tasks, and occasional
supervision.

(Tr. 20).

At step five of the sequential evaluation process, because Plaintiff could not

perform any past relevant work, and considering the her age, education, work

experience, and RFC, the ALJ determined "there are jobs that exist in significant

numbers in the national economy that the [Plaintiff] can perform (20 C.F.R.

404.1569 and 404.1569(a))." (Tr. 24-25).

Thus, the ALJ concluded that Plaintiff was not under a disability as defined

in the Social Security Act at any time between July 22, 2005, the alleged onset

date, and December 31, 2010, the date last insured. (Tr. 25).

## DISCUSSION

On appeal, Plaintiff asserts the following arguments: (1) the ALJ erred in

finding Plaintiff's mental health impairments did not meet Listing 12.06; (2) the

ALJ erred in the weigh he afforded to the medical opinion evidence; and (3) the

ALJ erred in determining Plaintiff's credibility. (Doc. 14, pp. 12-28). Defendant

disputes these contentions. (Doc. 16, pp. 16-26).

### A.   Medical Opinion Evidence

Plaintiff asserts that the ALJ erred in the weight he afforded to the medical

opinions. (Doc. 14, pp.17-24). More specifically, she argues that the ALJ erred in giving little weight to the physicians who were Plaintiff's treating physicians and counselors who rendered opinions consistent with the record. (Id.).

The preference for the treating physician's opinion has been recognized by the Third Circuit Court of Appeals and by all of the federal circuits. See, e.g., Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000). This is especially true when the treating physician's opinion "reflects expert judgment based on a continuing observation of the patient's condition over a prolonged time." Morales, 225 F.3d at 317; Plummer, 186 F.3d at 429; see also 20 CFR § 416.927(d)(2)(i)(1999) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

However, when the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Morales, 225 F.3d 316-18. It is within the ALJ's authority to determine which medical opinions he rejects and accepts, and the weight to be given to each opinion. 20 C.F.R. § 416.927. The ALJ is permitted to give great weight to a medical expert's opinion if the assessment is well-supported by the medical

evidence of record.  See Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 961

(3d Cir. 2006) (holding that there was substantial evidence to support the ALJ's

RFC determination that the plaintiff could perform light work, even though this

determination was based largely on the opinion of one medical expert, because the

medical expert's opinion was supported by the medical evidence of record); Baker

v. Astrue, 2008 U.S. Dist. LEXIS 62258 (E.D. Pa. Aug. 13, 2008).

Regardless, the ALJ has the duty to adequately explain the evidence that he

rejects or to which he affords lesser weight.  Diaz v. Comm'r of Soc. Sec., 577

F.3d 500, 505-06 (3d Cir. 2009) (holding that because the ALJ did not provide an

adequate explanation for the weight he gave to several medical opinions, remand

was warranted).  "The ALJ's explanation must be sufficient enough to permit the

court to conduct a meaningful review."  In re Moore v. Comm'r of Soc. Sec., 2012

U.S. Dist. LEXIS 100625, *5-8 (D.N.J. July 19, 2012) (citing Burnett v. Comm'r

of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000)).

The ALJ gave little weight to the opinions of Dr. Mira, Mr. Benner, and Ms.

Abbey because they were not consistent with the record.  (Tr. 23).  He also gave

little weight to the opinion of Dr. Motrin because it was "not supported by

ongoing treatment notes."  (Tr. 23).

In examining the weight the ALJ has afforded to these medical opinions, it

is determined that while the ALJ gave little weight to four (4) different medical opinions, the ALJ has failed to explain what medical opinion he relied on in determining Plaintiff's mental RFC because he did not give any significant or great weight to any medical opinion that provided mental health limitations contrary to the aforementioned medical opinions.  Instead, the ALJ seemingly interpreted the medical evidence of record, and substituted his own opinion for that of a medical one in arriving at Plaintiff's mental RFC because these four (4) aforementioned medical opinions regarding the functional limitations resulting from Plaintiff's mental health impairments are the only ones rendered on this issue.  The Third Circuit has repeatedly held that "an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F. 3d 310, 317-18 (3d Cir. 2000) (internal citations omitted); See Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) ("An ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting" the medical evidence.).  Therefore, because the ALJ has apparently relied on his own substituted medical opinion in arriving at Plaintiff's mental RFC, and because the medical evidence is consistent

23

with the opinions, substantial evidence does not support the ALJ's RFC finding. As such, remand is warranted, and thus the remaining issues raised in Plaintiff's complaint will not be addressed.

## CONCLUSION

Based upon a thorough review of the evidence of record, it is determined that the Commissioner's decision is not supported by substantial evidence. Therefore, pursuant to 42 U.S.C. § 405(g), the appeal will be granted, the decision of the Commissioner will be vacated, and the matter will be remanded to the Commissioner for further proceedings.

A separate Order will be issued.

**Date**: September 26, 2016

/s/ **William J. Nealon**
**United States District Judge**

24